FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 29 2011 ★
LONG ISLAND OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
KATRINA D. CONWAY,

                        Plaintiff,

      -against-

TIMOTHY GEITHNER, SECRETARY
OF THE DEPARTMENT OF THE
TREASURY,

                      Defendant.
------------------------------------------------------X

**ORDER**
08-CV-5218 (SJF)(ARL)

FEUERSTEIN, J.

I.    Introduction

On December 17, 2008, pro se plaintiff Katrina D. Conway ("plaintiff") commenced this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), alleging, inter alia, that she was discriminated against on the basis of her race, national origin, and religion. Before the Court is the motion for summary judgment filed by defendant Timothy Geithner, Secretary of the Department of the Treasury ("defendant"). [Docket Entry No. 62]. For the reasons that follow, defendant's motion is granted.

1

II.  Discussion

   A.  Factual Background[1]

The following facts are not in dispute. Plaintiff is an African-American female who identifies herself as a Christian. See Amended Complaint [Docket Entry No. 10] ("Amend. Compl.") at 3. From June 19, 2006 to May 18, 2007, plaintiff was employed by the Internal Revenue Service ("IRS") as a Human Resource Specialist in Holtsville, New York. Defendant's 56.1 Statement [Docket Entry No. 63] ("Def. 56.1 Stat.") at ¶ 13. Plaintiff's employment was subject to the condition that she successfully complete a one-year period of probation. Id. at ¶ 14.

While applying for the position, plaintiff completed and submitted a "Declaration for Federal Employment." Id. at ¶ 16. Plaintiff certified on the employment declaration that all information contained therein was "true, correct, complete and made in good faith." Id. at ¶ 17; Def. Ex. E [Docket Entry No. 65-6]. Plaintiff further certified that she "underst[oo]d that a false or fraudulent answer to any question or item on any part of [the employment declaration] . . . may be grounds for not hiring [her] . . . or for firing [her] after [beginning] work . . . ." Def. 56.1 Stat. at ¶ 18; Def. Ex. E. Question number eleven (11) of the employment declaration asked: "Are you now under charges for any violation of law?" Plaintiff responded "no." Def. 56.1 Stat. at ¶ 19;

---

[1] The facts are construed in the light most favorable to plaintiff, as the non-moving party. All factual ambiguities are resolved and all reasonable inferences are drawn in her favor. Capobianco v. City of New York, 422 F.3d 47, 50 n. 1 (2d Cir. 2005).

Def. Ex. E. Plaintiff did not disclose the fact that she had been arrested on March 29, 2006 and charged with harassment, in violation of Penal Law § 240.26. Def. 56.1 Stat. at ¶¶ 3, 20; Def. Ex. A [Docket Entry No. 65-2].[2]

Plaintiff claims that she found the IRS office to be a "hostile work environment" and that she was subjected to "horrendous ridicule" while working there. Plaintiff's Memorandum ("Pl. Br.") [Docket Entry No. 68] at 6, 22. Plaintiff's submissions describe a series of disagreements and confrontations with her former co-workers during her time at the IRS. Plaintiff's Affidavit ("Pl. Aff.") [Docket Entry No. 72] at ¶¶ 3-28; Pl. Br. at 6-24. Plaintiff alleges that she was targeted for mistreatment by other IRS employees who were motivated by racial and religious discrimination. See, e.g., Amend. Compl. at 3, 6-13.

On January 26, 2007, plaintiff was arrested again and charged with petit larceny, in violation of Penal Law § 155.25, and harassment, in violation of Penal Law § 240.26. Def. 56.1 Stat. at ¶ 9. The Suffolk County Police Department subsequently notified the IRS about plaintiff's arrests. Id. at ¶ 10.

In a letter dated May 11, 2007, the IRS notified plaintiff that it would terminate her employment effective May 18, 2007. Def. Ex. F [Docket Entry No. 65-7]. The letter stated that the termination was due to plaintiff's January 26, 2007 arrest and her false response to Question 11 on the employment declaration. Id. Plaintiff signed a letter of resignation dated May 18, 2007. Def. Ex. G [Docket Entry No. 65-8].

In May 2007, plaintiff filed an appeal with the Merit Systems Protection Board

---

[2] These charges were dismissed in 2009 pursuant to Criminal Procedure Law § 170.55. Def. Ex. A.

3

("MSPB"). Def. 56.1 Stat. at ¶ 25; Def. Ex. H. In the appeal, plaintiff claimed that she had been discriminated against on the basis of her race, color, and religion. Def. 56.1 Stat. at ¶ 26; Def. Ex. H. On August 14, 2007, the MSPB dismissed plaintiff's appeal for lack of jurisdiction. Def. 56.1 Stat. at ¶ 28; Def. Ex. I.

Plaintiff contacted an EEOC counselor in August 2007, Def. 56.1 Stat. at ¶ 29, and filed a formal complaint of discrimination with the Department of the Treasury on February 1, 2008, Def. 56.1 Stat. at ¶ 30; Def. Ex. J. The formal complaint alleged discrimination against plaintiff on the basis of her race, color, and religion. Def. 56.1 Stat. at ¶ 31; Def. Ex. J.

Plaintiff commenced this action on December 17, 2008. Plaintiff's amended complaint alleges: (1) discrimination on the basis of her race, color, religion, and national origin; (2) retaliation; (3) "defamation of character"; and (4) "harassment." [Docket Entry No. 10 at 3]. On April 6, 2011, defendant moved for summary judgment.

B.  Analysis

1.  Summary Judgment Standard.

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether

4

there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted).

An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required . . . to set forth specific facts showing that there is a genuine issue of material fact to be tried. . . . If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . , or upon the mere allegations or denials of the [nonmoving] party's pleading." Id. (internal quotation marks and citations omitted).

2. Plaintiff's Claims Pursuant to Title VII

    a. Discrimination on the Basis of Race, Color, National Origin and Religion

Under Title VII, it is "an unlawful employment practice for an employer . . . to

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 74 n. 2 (2d Cir. 2010) (quoting 42 U.S.C. § 2000e-2(a)(1)). Plaintiff alleges that the IRS discriminated against her on the basis of her race, color, religion, and national origin, Amend. Compl. at 3, and apparently claims that this discrimination: (1) created a "hostile work environment" and (2) led to the termination of her employment.

i. Plaintiff's Termination

First, plaintiff claims that the office's acting director "believed [a co-worker's] stereo type [sic] of me and acted hastily when she terminated me." Pl. Aff. at ¶ 28. Claims of discriminatory termination pursuant to Title VII are analyzed under the McDonnell-Douglas burden-shifting framework. See, e.g., Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008); Ebanks v. Neiman Marcus Group, Inc., 414 F.Supp.2d 320, 325 (S.D.N.Y. 2006). Under the McDonnell-Douglas framework, plaintiff must first establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. Ebanks, 414 F.Supp.2d at 325. The plaintiff's burden of proof at the prima facie stage "is not onerous." Mathirampuzha, 548 F.3d at 78 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. Ruiz

v. County of Rockland, 609 F.3d 486, 492 (2d Cir. 2010). If the defendant articulates a nondiscriminatory reason for the action, the burden shifts to plaintiff to prove that the reason was a pretext for discrimination. Id.

Here, there is no dispute that plaintiff is a member of a protected class, that she was qualified for her position, or that she suffered an adverse employment action. Thus, in order to determine whether plaintiff has established a prima facie case, the Court turns to the fourth prong of the analysis.

Plaintiff has not demonstrated that her termination occurred under circumstances that give rise to an inference of discriminatory intent, and has therefore failed to establish a prima facie case. Plaintiff argues that, while working at the IRS, she was "stereo typed [sic], lied on [sic], threatened, harassed on a daily basis, accused of stealing a co-worker's purse, ridiculed, [and] called horrible names." Pl. Br. at 1. Plaintiff lists a series of disagreements and confrontations that she had with fellow employees, including: (1) that a co-worker "convinced [a supervisor] that [plaintiff] pulled her arm"; (2) that, after a confrontation in a ladies' room, an employee "made up [a] lie" that plaintiff "rolled [her] eyes, pointed [her] finger and bobbed [her] head, simulating a stereo typed [sic] Black person"; (3) that she was called "a bulldog" and "a bulldozer"; (4) that she was accused of stealing a co-worker's purse; and (5) that another employee told plaintiff to "watch [her] back." Pl. Br. at 1, 6, 14; Pl. Aff. at ¶¶ 3-28; Amend. Compl. at 6-13. Plaintiff also alleges that other employees appeared to be "dissatisfied" with a collage she made in celebration of Black History Month, that she was "reprimanded" for saying a blessing before a meal, and that two (2) Caucasian employees hired at approximately the same time as her "are still employed." Amend. Compl. at 12; Pl. Aff. at ¶ 15; Pl. Br. at 16-17.

7

However, there is no evidence that plaintiff was treated differently from any similarly situated individual outside of her protected class. The allegations do not suggest anything more than interpersonal conflicts between plaintiff and her co-workers, and do not give rise to an inference that she suffered discrimination on the basis of her race, color, national origin, or religion.

Even if plaintiff had established a prima facie case, her claim would fail because defendant has articulated several legitimate, nonpretextual reasons for her termination, namely her 2007 arrest and the fact that plaintiff misrepresented her criminal history on the employment declaration. See, e.g., Ganzy v. Sun Chemical Corp., No. 06-CV-3424, 2008 WL 3286262, at *8 (E.D.N.Y. Aug. 8, 2008) ("[C]ourts have routinely held that lying on an employment application constitutes a legitimate non-discriminatory ground for termination."); Kravit v. Delta Air Lines, Inc., No. CV 92-0038, 1992 WL 390236, at *2 (E.D.N.Y. Dec. 4, 1992) ("It is well settled that a misstatement of a material fact on an employment application is a sufficient non-discriminatory ground" for an adverse employment decision.) (citations omitted).

Although plaintiff seems to suggest that the charges stemming from her 2006 arrest were not "true" and were "just a bunch of made up lies," Pl. Br. at 1, whether plaintiff believes she had a defense to the criminal charges is irrelevant. The fact that plaintiff responded falsely to Question 11 on her employment declaration was a legitimate reason for her termination, despite her alleged belief that a misdemeanor criminal charge did not qualify as a "charge[] for any violation of law," Pl. Aff. at ¶ 24. See Ganzy, 2008 WL 3286262, at *8.

      ii.    Hostile Work Environment

Plaintiff also alleges in the Amended Complaint that the IRS office was a "hostile,

hateful" work environment. Amend. Compl. at 7, 10; see also Pl. Br. at 6, 22. "Title VII is violated '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "To survive a motion for summary judgment, a plaintiff claiming he or she was the victim of an unlawful hostile work environment must elicit evidence from which a reasonable trier of fact could conclude '(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Id. (quoting Richardson v. New York State Dept. of Corr. Serv., 180 F.3d 426, 436 (2d Cir. 1999)).

Although plaintiff may have experienced a variety of conflicts and disagreements with her co-workers, there is no evidence that the perceived insults were discriminatory in nature or that they rose to the level of creating a hostile working environment.[3] Moreover, there is no "specific basis" for imputing the conduct of individual employees to the employer. Therefore, summary judgment is granted as to any claim of a hostile work environment.

---

[3] At most, alleged discriminatory remarks by plaintiff's former co-workers were occasional and isolated. See, e.g., Pl. Aff. ¶ 16 (alleging that a co-worker referred to an African-American speaker as a "colored man"). Allegations of this nature are not "severe or pervasive enough" to establish an abusive work environment. See Thomas v. iStar Financial, Inc., 652 F.3d 141, 151 (2d Cir. 2011).

b.  Retaliation.

"Title VII [] makes it unlawful for an employer to discriminate against an employee 'because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge . . . in an investigation, proceeding, or hearing under this subchapter." Kaytor v. Electric Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010) (quoting 42 U.S.C. § 2000e-3(a)). Title VII's "anti-retaliation provision is intended to further the goals of the anti-discrimination provision 'by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees." Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (quoting Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 63, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).

Retaliation claims pursuant to Title VII are evaluated under a similar three-step burden-shifting analysis. Id. (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, plaintiff must establish a prima facie case. To do so, plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Jute, 420 F.3d at 173 (quoting McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001)). If plaintiff satisfies her initial burden, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. Id. Finally, if the employer offers such proof, the burden shifts back to the employee to show that retaliation was a substantial reason for the adverse employment action. Id.

Plaintiff has failed to establish a prima facie case. "'Protected activity' refers to actions - formal or informal - taken by the plaintiff to protest or oppose statutorily prohibited discrimination, or his making of charges, testifying, assisting or participating 'in any manner in an investigation, proceeding, or hearing.'"). Bey v. I.B.E.W. Local Union No. 3, No. 05 Civ. 7910, 2008 WL 821862, at *22 (S.D.N.Y. Mar. 26, 2008), aff'd, 374 Fed. Appx. 187 (2d Cir. Apr. 22, 2010) (quoting 42 U.S.C. § 2000e-3). It is unclear what "protected activity" plaintiff engaged in other than: (1) filing her MSPB appeal, (2) filing her formal complaint with the Department of Treasury, and (3) filing this action. However, plaintiff took all of these actions *after* the IRS terminated her employment, and she fails to identify any "causal connection" between her activity and her termination. See Schwartz v. York College, No. 06-CV-6754, 2011 WL 3667740, at *10 (E.D.N.Y. Aug. 22, 2011).

Moreover, "[e]xhaustion of administrative remedies is a pre-condition to bringing a Title VII claim in federal court." Ghaly v. U.S. Dept. of Agriculture, 739 F.Supp.2d 185, 197 (E.D.N.Y. 2010) (internal quotation marks omitted) (citations omitted). "A Title VII plaintiff typically may raise only those claims that are either contained in a prior EEOC charge or are 'reasonably related' to allegations raised therein." Id. (citations omitted). As defendant points out, plaintiff failed to include her retaliation claim in her MSPB appeal or formal complaint with the Department of Treasury. Since plaintiff raises this claim for the first time in this action, and her retaliation claims are not "reasonably related" to her prior complaints, see generally Melendez v. International Svc. Sys., Inc., No. 97-CV-8051, 1999 WL 187071, at *7-8 (S.D.N.Y. Apr. 6, 1999), she has failed to exhaust her administrative remedies. This claim must therefore be dismissed.

### 3. Defamation and Harassment

Finally, plaintiff's Amended Complaint includes claims of "defamation of character" and "harassment." Amend Compl. at 3. First, plaintiff's harassment claim must be dismissed because "New York does not recognize an independent tort for 'harassment'." Jenn-Ching Luo v. Baldwin Union Free School Dist., 10-CV-1985, 2011 WL 941263, at *8 (E.D.N.Y. Mar. 15, 2011). Second, the Court agrees with defendant that plaintiff's state law tort claims are an attempted "'end-run' around the exclusivity of the Title VII remedy" and must therefore be dismissed. Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." Rivera v. Heyman, 157 F.3d 101, 105 (2d Cir. 1998) (quoting Brown v. General Servs. Admin., 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). Here, however, plaintiff's "state law tort claims derive solely from the alleged workplace discrimination underlying [her] federal law claims." Spinelli v. Secretary of Dept. of Interior, No. 99-CV-8163, 2006 WL 2990482, at *9-10 (E.D.N.Y. Oct. 19, 2006) (dismissing state law claims); see also Lewis v. Snow, No. 01 Civ. 7785, 2003 WL 22077457, at *11-12 (S.D.N.Y. Sept. 8, 2003). Accordingly, plaintiff's state law claims are dismissed.

## III. Conclusion

For the foregoing reasons, defendant's motion for summary judgment [Docket Entry No. 62] is granted. The Clerk of Court is directed to close this case. In accordance with Rule 77(d) of the Federal Rules of Civil Procedure, the Clerk of Court shall serve a copy of this order upon all parties and shall record such service on the docket.

**SO ORDERED.**

/s/ SANDRA J. FEUERSTEIN

Sandra J. Feuerstein
United States District Judge

Dated: December 29, 2011
Central Islip, New York